# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## *Guy P. Matthews *et al. vs.* William A. Dunbar.

### January Term, 1869.

1. When pleadings are verified by the oath of the party, the court will not easily suffer an amendment. And before a court of equity should allow an amended answer to be filed, it should be satisfied that the reasons assigned for it are cogent and satisfactory; that the mistakes to be corrected or facts to be added are made highly probable if not certain; that they are material to the merits of the case in controversy; that the party has not been guilty of gross negligence, and that the mistakes have been ascertained and the new facts have come to the knowledge of the party since the original answer was filed.

2. A bond given for the price of slaves, prior to 1861, has a valid consideration, and cannot be avoided for want of consideration by reason of the emancipation of the slaves by the U. S. Government or the State Government.

This cause arose in Kanawha county. The summons was returnable to June rules, 1866.

The material facts are given in the opinion of the President.

*Delafield Du Bois* for the plaintiffs in error.

*H. C. McWhorter* for defendant in error.

Brown, President. Prior to 1861, Dunbar sold to Wilson certain slaves, who gave his bond for a balance of the price, with Matthews and Morrison as his securities. In 1865, Dunbar recovered judgment at law on the bond and upon

---

*This cause was argued at the July term, 1868, before President Brown and Judge Maxwell. Absent, Harrison, J., from illness.

the return of *nulla bona* filed his bill in 1866 to subject the lands of the debtors to the judgment lien. Matthews answered, and among other things set up the fact that the bond on which the judgment was founded was given for the price of slaves.

At a subsequent term Matthews tendered what he called an amended or supplemental answer, which contained also a prayer that it be read as a cross bill, and the complainant Dunbar be required to answer it. The complainant Dunbar by his counsel objected to the filing of it, and it was rejected by the court. This opinion of rejection is alleged here as cause of error. As an amended answer it was objectionable, as stating no new fact not known at the time of filing the original answer and substantially contained therein. It was also objectionable because its substantial difference from the original answer was its argumentative character. It was properly rejected because no leave had been obtained for filing it, and because no sufficient ground for such leave was shown to make it the duty of the court to grant such leave. For where pleadings are verified by the oath of the party the court will not, for obvious reasons, easily suffer an amendment to be made. Before any court of equity should allow such amended answer it should be satisfied that the reasons assigned for the application are cogent and satisfactory; that the mistakes to be corrected or the facts to be added are made highly probable if not certain; that they are material to the merits of the case in controversy; that the party has not been guilty of gross negligence, and that the mistakes have been ascertained and the new facts have come to the knowledge of the party since the original answer was put in and sworn to. Where the party relies on new facts which have come to his knowledge since the answer was put in; or where it is manifest that he has been taken by surprise, or where the mistake or omission is manifestly a mere inadventance or oversight there is generally less reason to object to the amendment than there is where the whole bearing of the facts and evidence must have been well known before the answer was put in. Story's Equity Plead-

ings, sec. 896; Metcalf's Equity Pleading, 327–8; *Smith* vs. *Babcock*, 3 Sumner Rep., 583; *Bowen* vs. *Cross*, 4 Johnson's Chancery Rep., 375; *Gunivece, &c.,* vs. *Elmerdorp, &c.,* 4 Johnson's Chancery Rep., 359.

Again, the material fact in the original answer, viz: that slaves were the consideration of the debt, and had subsequently become free, which was not denied by replication, being the same as that alleged in the amended answer and cross bill, the discovery prayed for was unnecessary. I think, therefore, that there was no error in rejecting the said answer whether taken as an amended or supplemental answer or as a cross bill. But the important question still recurs, whether the fact stated in the original answer, as well as in the pleading, rejected and not denied by replication, viz: that the consideration of the bond on which the judgment was founded was the price of slaves sold before the war and freed by its operation or by the act of the Government, before the judgment in question was rendered, could avoid a recovery or afterwards absolve the obligors?

No question has been raised that the objection was not taken in defence to the action at law on the bond, and I shall proceed at once to consider the question on its merits. It is nowhere set up or pretended that the slaves were freed by the unlawful act of the complainant Dunbar, or by any unlawful participation by him in any act which caused that result or loss to the defendants. The sale and delivery of the slaves prior to 1861, when that was lawful, passed the property in them to the purchaser, and was a valid consideration for the bond given for the price. The results of the war and the action of the government which liberated the slaves without the default of the complainant Dunbar could only effect the owner of the slaves at the time the fact of emancipation happened, and not the former owner, who had long before lawfully parted with all his property in them.

It is said in the paper rejected that the supreme courts of the States of Mississippi, Louisiana and Kentucky have declared all contracts of this character to be null and void, but we have not been furnished with the cases if they exist,

and in the absence of an authoritative decision in point the question must be determined on principle with the aid of the lights before us.

It is nowhere shown whether the emancipation of the slaves in question was the result of any of the acts of Congress or proclamations of the President against disloyalty, or the constitutional amendment, or of the act of the State legislature abolishing slavery; but one thing is certain that whereas once they were slaves now they are free. And as it has been the boast of the mother country that there were no slaves in England, so it was but recently the boast of the American minister at the court of St. James as the crowning glory of the country he had the honor to represent, that all were freemen in the land of Washington and Lincoln. If the emancipation was effected by the acts of Congress or the President's proclamations as a forfeiture for the owner's disloyalty, he should not shift the penalty of his own error from his own shoulders upon that of the vendor. Or, if it was the result of the acts of the State legislature, he should look to the State, whose constitution authorizes no act of legislation which impairs the obligation of contracts nor the taking of private property for public use without just compensation. Had the slaves died or run away before emancipation the result to the purchaser had been the same that it is, but no discharge would have followed as a consequence in his favor for failure of the consideration of his bond for the purchase money.

And nothing it would seem could be clearer than that the causes, whether of war or law, which operated to give freedom to the slaves in the hands of the purchaser without the default of the vendor did not, and could not, discharge the purchaser from his obligation to pay the purchase money on a contract authorized by law when entered into. In such case the purchaser, and not the vendor, took upon himself the hazard of the future action of the government in respect to the slaves in whose services property existed only by virtue of its authority.

As well maintain that a bankrupt law which discharged

a debt for the price of slaves would also as a consequence emancipate the slaves or restore the property in them to the vendor.

I think, therefore, that there was no error in the decree complained of for the causes alleged, and the same ought, therefore, to be affirmed, with costs to the appellee.

Judge Maxwell concurred.

DECREE AFFIRMED.