# Wheeling.

TRACEWELL *v.* BOGGS, *et al.*

Decided November 30, 1878.

1878
Special Term.

1. Where the bill is clear and specific as to the terms of sale, the land sold and the price per acre it sold for, and alleges, that the vendee took immediate possession of the land under said sale and has been in continuous and peaceable possession thereof ever since the sale, but refuses to pay the balance of the purchase money, the bill is sufficient in law, and a demurrer thereto is properly overruled. *Goddin* v. *Vaughn's ex'r, &c.*, 14 Gratt. 102, cited and approved.

2. Under the statute, a defendant has a right to file his answer at any time before final decree; but if it be not filed in due time, the suit shall not thereby be continued, unless the court shall for good cause so order.

3. Where a defendant has filed an answer to the bill, which has been replied to, and the cause comes on for hearing, the defendant will not be permitted to withdraw his answer for the purpose of substituting another, on the ground that he had forgotten to present a material matter of defense in his first answer; but he may be permitted to amend his answer, setting up such new matter, but in no wise to delay the hearing of the cause.

4. Where the new or amended answer presents new matter, that is not material to the defense, the court may refuse to permit it to be filed.

Appeal from and *supersedeas* to a decree of the circuit court of Wood county, rendered on the 2d day of August, 1875, in a cause therein pending, wherein Edward Tracewell was plaintiff, and F. C. Boggs and others

· were defendants, granted and allowed on the petition of said F. C. Boggs.

Hon. James Monroe Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

MOORE, JUDGE, furnishes the following statement of the case :

Upon an appeal from the decree rendered August 2 1875, by the circuit court of Wood county.

The bill shows, that James Thompson, died seized of a certain tract of land in Wood county, containing three hundred and forty-four and one-half acres, and left a will, at his decease, duly executed and admitted to probate in said county, wherein he appointed said Edward Tracewell and M. P. Amiss his executors, who duly qualified as such. Said will authorized and directed said executors to make sale of testator's estate, personal and real, at public or private sale, and gave power to said executors to execute conveyances for the real estate so sold.

On the 16th day of October, 1865, the executors having previously advertised the time and place of the sale of said land, did, under authority of said will, sell three hundred and forty acres of the said land at public auction at the court house of Wood county, to said F. C. Boggs for the price of $19.00 per acre, which amounted to $6,460.00, of which sum said Boggs paid in hand $1,615.00, and for the residue executed two notes for $2,422.50 each to said executors, with J. H. Robinson as his surety, which notes bore interest from date of sale, October 16, 1865 ; and they executed and delivered to said Boggs a contract of sale for said land, to convey the same to him upon payment of the purchase money. Boggs entered into possession of said tract of land, under and by virtue of his purchase, on the day of sale.

When said notes became due and payable, the executors desiring to pay off the legacies directed to be paid under the provisions of said will, plaintiff out of his in-

dividual funds advanced the money due on said notes to said executors, "and said executors by an endorsement made on the said notes endorsed the same to the plaintiff, whereby the money arising from said notes became due and payable to the plaintiff." Said Boggs and his surety, Robinson, having failed and refused to pay the money, when the notes became due and payable, plaintiff instituted an action of debt, in the circuit court of Wood county, in the name of the said executors for the use of plaintiff, against said Boggs and Robinson, to enforce the collection thereof, and at the March term thereof, 1873, judgment was rendered in the name of said executors for use of plaintiff for $4,845.00, the amount of said notes, with legal interest thereon from October 16, 1865, subject to credits endorsed on said notes, viz: $200.00 paid August 10, 1866, $900.00 paid December 26, 1866, $100.00 paid February 22, 1867, $50.00 paid June 17, 1867, and $200.00 paid May 3, 1871, together with $19.20 costs of suit. (Abstract of judgment filed as exhibit, &c.)

After rendition of said judgment Boggs obtained a *supersedeas* from the Supreme Court of Appeals; and at the August term, 1874, of said Supreme Court of Appeals said judgment was affirmed. After the mandate of of said Supreme Court of Appeals was duly entered in the records of said circuit court, plaintiff sued out of said circuit court a writ of *fieri facias*, to enforce the collection of said judgment so affirmed, against said Boggs and Robinson, including the damages allowed by law, which writ came into the hands of the sheriff of said Wood county to be executed. Said sheriff, before the return day thereof, levied said writ, as follows, viz: "By virtue of the within, I have this 2d day of October, 1874, levied on three horses, three sets harness, one yoke oxen, as the property of John H. Robinson, no other property found belonging to either of the defendants; returned for want of time to sell." (An office copy of said writ, and the return of the sheriff thereon, exhibited with the bill, &c.) After the return of the said *fi. fa.*, plaintiff

sued out of said circuit court, a writ of *venditioni exponas*, directed to the sheriff of said Wood county, to sell the property so levied on, which was executed by said sheriff as appears by his return thereon as follows, viz: "Cr. by bal. on sale of horses $26.03, after deducting sheriff's coms. $1.30, leave a bal. of $24.73 to be applied on execution, Jan. 6, 1875. No other property found in my bailiwick." (An office copy of said writ, with sheriff's return thereon, exhibited with the bill as a part thereof.)

Plaintiff charges, that said $24.75 is all the money he has been able to realize on said judgment, and that the residue thereof is wholly unsatisfied to him; that neither said Boggs nor Robinson have any personal property out of which said judgment can be made, that such judgment being a lien upon the land so sold to said Boggs, and being for the purchase money thereof, plaintiff claims a right to come into a court of equity to assert his lien.

Plaintiff exhibited with his bill a deed made by said executors to said Boggs, conveying the land sold by them to him, and alleges, that said deed contained "an accurate and full description of said land," and "the quantity thereof," which deed, being made by said exhibit a part of the bill, is asked to be delivered to Boggs upon proper order of the court. The prayer of the bill is for a decree to sell said land, to satisfy said judgment, and costs of this suit, &c.

It appears, that at the rules held "the first Monday in May, 1875, the defendants still failing to appear the bill was taken for confessed, and the cause set for hearing."

It appears from the decree of July 24, 1875, that F. C. Boggs filed a demurrer to said bill, and the court overruled the same, and required him to answer the bill; and "thereupon said defendant, F. C. Boggs, filed" his answer, to which complainant replied generally, and also filed a special replication, "to which special replication said Boggs rejoined generally." The court then pronounced its decree; which decree was afterwards set

aside, to-wit: August 2, 1875. Answers to said bill by H. J. Boggs and James Dagg appear in the record, but when filed does not appear; but the court in its decree of August 2, 1875, recognized them as filed. By the decree of August 2, 1875, the court overruled the demurrer to the bill, and directed the said land to be sold to satisfy the judgment lien.

From that decree this appeal was taken by said F. C. Boggs.

*George Loomis*, for appellant, relied on Code, ch. 125, § 53.

*John A. Hutchinson*, for appellee, cited the following authorities:

14 Gratt. 102; 4 H. & M. 405; 1 Brock. 119; 3 W. Va. 138; 5 Munf. 295; 3 Call. 558; 2 Wash. 70.

MOORE, JUDGE, delivered the opinion of the Court:

The appellant considers the court erred by overruling the demurrer, because it is admitted in the bill, that the sale was by the acre, $19.00 per acre, and that four and one-half acres were reserved and not sold to appellant, because the title thereto was in dispute; that the bill does not show, where the said four and one-half acres are, whether in the centre or adjoining the sides of the whole tract; and that the deed, tendered with the bill, conveys three hundred and forty-four and one-half acres, while the bill alleges that only three hundred and forty acres are conveyed to appellant, without showing to or apprising him whereabouts the four and one-half acres are, that are alleged to be reserved; and because, also, the bill shows, that there were not only large credits endorsed on said notes, or one of them, but also that appellant was entitled to further credits, viz: the amounts realized on the sale of property taken under execution, as shown by the return of the sheriff, and that plaintiff does not show what became of the property levied on, except the horses; that in that respect the bill is defec-

tive in seeking to pursue appellant for an indefinite sum of money, which it is in the power of the plaintiff to ascertain, and to sell a tract of appellant's land to satisfy such sum without giving such a description of the land, as will enable the seller to know what he is selling, and the purchaser to know what he is buying.

As to the credits claimed, the bill is certainly specific. It states the payments, that had been made on the notes; it sets forth the sheriff's return as to the levy of the *fi. fa.*, showing that he returned the property "for want of time to sell," and set forth the sheriff's return on the *venditioni exponas*, showing a credit by balance on sale of horses $26.03, after deducting sheriff's commissions, $1.30, leaving a balance of $24.73, to be applied on the execution, and further showed, no other property found. If the appellant was entitled to other credits, it was in his power to make them known in his defense; but I cannot see what ground that affords for a demurrer.

As to the quantity of land sold, the bill is specific, that the executors sold the appellant three hundred and forty acres of the three hundred and forty-four and one-half acres, but that they reserved from the sale the four and one-half acres, because there was a dispute as to the four and one-half acres. The deed tendered with the bill expressly reserves the four and one-half acres, "which is in dispute and is claimed by Wm. Fought, but conveys to appellant all the right, title and interest of the said James Thompson in and to the three hundred and forty acres. The appellant took immediate possession of the three hundred and forty acres, knowing at the time that the disputed four and one-half acres were not purchased by him, but were claimed by Fought. The bill is clear and specific as to the terms of sale, the land sold and the price per acre it sold for, the giving of immediate possession to appellant, thus presenting a case clearly within the principles laid down in *Goddin* v. *Vaughn's ex'r*, &c. and *Same* v. *Mason et al.* 14 Gratt. 102, that "where the sale is of such a character, and made under such circum-

1878
Special Term.

Tracewell
v.
Boggs, et al.

Syllabus 1.

stances, as fully and sufficiently to make known to the purchaser the exact nature of the title he is to expect; as where the sale is made avowedly by an executor under the provisions of the will, or by a sheriff or commissioner under an order of the court, he can of course only demand such title as was in contemplation of the parties, when the sale was made." The demurrer was properly overruled.

It is claimed that the court erred in refusing to let the appellant withdraw the answer filed July 24, 1875, and permit him to file another answer, he making affidavit "that the answer filed by him in this cause was intended by him as a guide or memorandum for his counsel to prepare a complete answer to complainant's bill, and did not know, that the same had been filed for his answer, until after it was filed," and "that one material matter of defense, which he desired to make to complainant's bill, was forgotten by him, and did not occur to his memory, until last evening, July 28, 1875, which matter is as follows: One Edward Deem has a portion of the land sold by complainant to this affiant in actual possession, under force, and has so held for the last five or six years, and also that this affiant has been compelled to pay taxes on the whole tract for eight or nine years, which he thinks ought to be refunded to him." The appellant insists, that the refusal of the court to permit the substitution of the new answer for the other that was filed was contrary to section 53, chap. 125 of the Code, which declares: "At any time before final judgment, or decree, a defendant may file a plea or answer, but if the same be not filed in due time, an action or suit shall not be thereby continued, unless the court shall for good cause so order."

It is true a defendant has a right to file his answer at any time before final decree. The appellant had filed his answer in this cause, and the plaintiff had replied thereto. He had had ample time to prepare his defense, but at the last moment comes in and asks the court to

Syllabus 2.

permit him to substitute another answer, because "one material matter of defense, which he desired to make, to complainant's bill was forgotten by him and did not occur to his memory, until last evening, July 28, 1875.".

The bill had been filed the first Monday in April, 1875. If the new matter of defense had truly been material, he should have been permitted to have filed an amended answer setting up such new matter, but in nowise to delay the hearing of the cause. (*Wyatt* v. *Thompson et al.*, 10 W. Va. 645.) But before a court of equity should allow an amended answer to be filed, it should be satisfied, that the reasons assigned for it are cogent and satisfactory ; that the mistakes to be corrected, or facts to be added, are made highly probable, if not certain ; that they are material to the merits of the case in controversy ; that the party has not been guilty of negligence ; and that the mistakes have been ascertained, and the new facts have come to the knowledge of the party, since the original answer was filed. *Matthews et al.* v. *Dunbar*, 3 W. Va. 138.

The appellant has not brought himself under this rule ; and in fact his affidavit shows, that the matters he alleges are not material to the merits of this case. He had been in possession of the land under his purchase from October 16, 1865, nearly ten years ; yet he wants to show, that Edward Deem has a portion of the land under fence in actual possession, and has so held the same for five or six years. If that is so, Deem was permitted by appellant to come into possession, and the plaintiff has nothing to do with that ; nor has it anything to do with the merits of this case. So too with the taxes he has paid for eight or nine years. He should pay taxes on his portion of the land ; and if he has paid more than that, he has his remedy, but certainly has no claim against the plaintiff for taxes, that are assessed on said land, since appellant came into possession. The answer therefore, even if treated as an amended answer, is not sufficient as such under the rules ; and the appellant has

1878
Special Term.

Tracewell
v.
Boggs, *et al.*

not been prejudiced by the refusal of the court to give leave to file it; but the court did right in overruling the motion to file the answer.

It is urged, that the court should have referred the cause to a commissioner to ascertain the location of the four and one-half acres, and also to ascertain, whether there were three hundred and forty acres after deducting the four and one-half acres. The appellant purchased the land with his eyes open. He knew what land he was getting; and it is reasonable to suppose, as the four and one-half acres were claimed by Fought and therefore excluded from the sale, that all the parties knew, where the four and one-half acres were; the appellant knows he has no claim to it; and under the circumstances the court of equity is not required to refer the matter to a commissioner for that purpose, no more than it would be required to refer the title to a commissioner, where the facts are all before the court, and the objection to the title to land purchased is a question of law. *Goddin* v. *Vaughn's ex'r*, &c., 14 Gratt. 102, or where he claims relief in equity against a judgment for the purchase money, on the ground that the title of the vendor is not good. He must prove it to be bad. It is immaterial where the four and one-half acres are located, he having taken possession of the three hundred and forty acres under his purchase, and having enjoyed the land for nearly ten years without molestation, equity will not delay the enforcement of the payment of the purchase money, on the ground merely that he alleges, that he does not know the location of four and one-half acres never sold him, nor because he alleges, that he is not certain, that he has really the three hundred and forty acres sold to him, especially where the court sees the contrary is apparent. Courts of equity will not dally with trifles, that do not enter into the merits of the cause.

As to the question of a continuance: the record does not show, that the appellant ever applied for a continuance. And even if he did apply, what purports to be

an affidavit does not show sufficient grounds for a continuance; does not pretend to show, that diligence towards taking proof of the matters set up in his answer, which this Court has frequently held must appear to entitle him to a continuance.

The decree of the circuit court should be affirmed, with costs and $30.00 damages; and the cause remanded to said circuit court to be proceeded in according to said decree.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED. CAUSE REMANDED.