# CHARLESTON

## MCKAY *v.* MCKAY'S ADM'RS.

Submitted January 17, 1890.—Decided March 10, 1890.

1. PERSONAL REPRESENTATIVE— JUDGMENT— EVIDENCE— GUARDIAN AND WARD—ACCOUNTING—PLEADING—CO-DEFENDANTS.

    A judgment against the personal representative of a decedent is not even *prima facie* evidence of a debt against the heirs of such decedent.

2. PERSONAL REPRESENTATIVE—GUARDIAN AND WARD—SET-OFF—ACCOUNTING.

    The administrators of a guardian who received moneys arising from a judicial sale in a partition cause of land descended to the ward from her father can not, in a settlement of the guardianship for such moneys, set off to the credit of the guardian's

estate, against such moneys, a judgment recovered by the administrators of the guardian against the administrator of the father of the ward for a debt due from him in his lifetime. The judgment is no evidence of debt against the ward, as an heir of her father.

3. PERSONAL REPRESENTATIVE—GUARDIAN AND WARD—JUDGMENT—ACCOUNTING.

An order made by a court upon a suggestion filed by the administrators of the guardian, suggesting that by reason of an execution upon such judgment there is a liability on them as administrators, directing such administrators to apply to the payment of such execution any money or estate in their hands as administrators belonging to or for which they were liable to the administrator of the father of such ward, can not operate to give such administrators credit against such moneys of the wards in a settlement of the guardianship account, any more than the judgment. The suggestion under the statute is only a proceeding to enforce the lien of an execution upon a judgment, and can add no force to the judgment, nor subject estate which that execution could not reach.

4. PERSONAL REPRESENTATIVE—GUARDIAN AND WARD.

One person is guardian of two infant sisters, who are equally owners of moneys paid to the guardian for the common benefit of both infants, and one of the infants sues the guardian's administrator for a settlement of the account of her guardianship, making her sister a defendant, alleging in her bill that the moneys paid to the guardian were the common property of herself and her sister, but not alleging that her guardian was also guardian of her sister, and asking only payment of what was due her from her guardian's estate. The sister files an answer, alleging that the deceased was also her guardian, and received such moneys for the benefit of both her sister and herself, and praying that the account, as between her and her deceased guardian, be settled in the suit, and a decree given her for what is due her from the guardian. The plaintiff shows herself entitled to relief against her guardian's estate, and the proof, as between plaintiff and defendant, shows the sister also entitled to similar relief. *Held*, that it was proper to receive such answer, and to decree for each of the wards against the guardian's administrators.

5. AMENDMENT—NEW MATTER.

An amended answer, presenting as new matter only matter immaterial and irrelevant, ought to be rejected.

6. GUARDIAN AND WARD—ACCOUNTING—INTEREST.

When a guardianship terminates by the death of the guardian, simple interest only, and not compound, should be charged from the death of the guardian on the balance found due from him at his death.

*O. Johnson, C. L. Brown* and *W. Miller* for appellants.

*J. H. Riley, N. C. Prickett* and *C. E. Hogg* for appellee.

BRANNON, JUDGE:

This is an appeal by W. H. and Z. T. McKay, administrators of William McKay, from a decree of the Circuit Court of Jackson county in a chancery suit by Mamie McKay, infant, by a next friend, against said administrators, to recover of the estate of their decedent money in their hands as her guardian, by which $2,138.59 was decreed to Mamie McKay, and a like sum to Florence McKay, against said administrators. The first error assigned is that a demurrer to the bill was overruled. As the decision of this matter involved no principles of law, but only this particular bill, I deem it sufficient to state simply that we are of opinion the bill is sufficient.

The next error assigned is that the court referred the cause to a commissioner to state an account of the guardianship without proof of the allegations of the bill. The bill alleged that William McKay had been appointed and qualified and had given bond as guardian, and had received certain specified sums of money as guardian on certain dates, and had neglected to make settlement therefor, and had not settled, accounted for or paid over the same to the plaintiff; and that the defendants had qualified as his administrators and received all his personal estate for administration, and they had failed to settle the guardianship account, and had failed and refused to account with or pay over to the plaintiff any part of said money.

The answer of W. H. McKay, as administrator, says that he was not advised, and could not state, what amount or amounts of money William McKay had in his lifetime received for Mamie McCay, and demanded strict proof thereof. It stated that William McKay, as guardian of plaintiff, did not neglect to make settlements as required by law. It next averred that William McKay, "as guardian of said Mamie McKay, and her respondent, as administrator of said William McKay, had settled and had fully accounted for as required by law all money and property belonging to the said plaintiff, for which said William McKay or respondent was or might

be in any wise liable." Now, here there is no denial that William McKay was such guardian, but an implied admission of the fact ; and while the answer says that respondent is not advised, and can not state, what amount or amounts of money said decedent received, and called for proof, yet, in the language of the answer above quoted, there is no denial that he did receive, but an implied admission that he did receive, some moneys, but had accounted for the same.

The answer of Z. T. McKay, the other living administrator, says it might be true that William McKay had been guardian, but does not admit that he received the specific sums charged to him in the bill. It alleges that he "made all the settlements that he was required by law to make as such guardian." It alleges that William McKay, "in his lifetime, and while he was guardian of plaintiff, laid out and expended, for the education, maintenance and support of said plaintiff, large sums of money, and respondent is advised that the estate of William McKay is entitled to credit as against any demand which plaintiff may have against respondent and his co-administrator for the sums so laid out and expended by the said William McKay." Here is an implied admission of the fact that money has gone into his hands. If he was guardian, and as such received money, these facts *prima facie* entitled the plaintiff to an account in a court of equity. The mere fact that the answers in general terms averred that settlements had been made without exhibiting or specifying any settlement or accounting will not defeat this right to an accounting. We are referred to *Livey* v. *Winton*, 30 W. Va. 554, (4 S. E. Rep. 451), which holds that "it is improper to order an account merely to establish by testimony the allegations of the bill;" but the facts above stated being stated or fairly deducible from the bill and answer, and they being sufficient to call for an account, the reference here ordered was not merely to establish allegations of the bill, but upon the bill and answer all that remained was mere matter of account ; and where it is merely matter of account, as stated in the opinion in that case by President Johnson, it is proper to make a reference for account. The evidence afterwards taken showed that an account was proper and necessary, and, even if it was improper to direct a reference

in the condition the cause was in when it was made, if it appear by after proceedings that an account was proper, this Court would not, merely because of such premature reference, reverse a decree. *Seabright v. Seabright,* 28 W. Va. 412.

The next assignment of error is that the court overruled defendants' exceptions to the report of the account by the commissioner. The defendants excepted to this report, because it did not allow them credit for $2,514.14 for which they, as administrators, had recovered judgment against Reuben Douglas, administrator of Spencer R. McKay, deceased. The nature of this matter is this : Spencer R. McKay, father of Mamie McKay, died in 1874, and William McKay brought an action of debt against Reuben Douglass, his administrator ; and this action having been revived in the names of William H. McKay, Z. T. McKay, and S. M. Hawith, his administrators, said administrators, on March 21, 1883, recovered a judgment against said administrator, Douglass, for $2,514.14, for a debt due William McKay from Spencer R. McKay. Upon this judgment a writ of *fieri facias* issued, and said administrators filed a suggestion in the Circuit Court of Jackson county, alleging that by reason of said *fieri facias* there was a liability on themselves as such administrators ; and upon such suggestion one of said administrators answered, and the court in the proceeding entered an order on November 13, 1884, reciting that it appeared upon his examination that said William H. and Z. T. McKay and S. M. Hawith, as administrators of William McKay, had money and estate in their hands which, but for said judgment, belonged and would go to the estate of Spencer R. McKay, to be administered by Reuben Douglass as his administrator, sufficient to pay said judgment, and directing that said administrators of William McKay, deceased, should apply such money and estate in their hands as such administrators, or otherwise belonging to, or for which they were liable to Reuben Douglass, as administrator of Spencer R. McKay, to the payment of said judgment.

The money in the hands of William McKay, as guardian, came from the sale of the Radcliff land, under decree of court by commissioners, some of the proceeds of which were

paid by them to said William McKay as guardian of Mamie McKay and Florence McKay, infant children of Spencer R. McKay. Douglass says he paid for and conveyed to the widow and heirs of Spencer R. McKay two fifteenths of said land, to be held by them as their interests, as though it descended from Spencer R. McKay as his property. What he meant by this we do not certainly know, unless to show that the widow had only a dower. It could not make it assets of Spencer McKay, if he did not in fact own it. The conveyance is not exhibited. It is probable these two fifteenths coming from Douglass, the grandfather of these children, were their property, never their father's. The interest of these heirs is called in the receipts from William McKay to the commissioners eight and one half shares, but what the shares were is not therein stated. Elsewhere it seems they were sixteenths. Upon these facts the question arises whether, in stating the account of William McKay as guardian, his estate should have been credited with the said judgment in its favor against the estate of Spencer R. McKay. Of course, such portion of the money in William McKay's hands as may have come from the interests of said children owned by them, not derived from their father, Spencer R. McKay, could not be charged with any part of said judgment. Nor do I think that the proceeds of the sale of land derived by descent to said children from their father could in this suit be charged with said judgment; that is, credited to the guardian in said account. The judgment against Reuben Douglass, administrator of Spencer R. McKay, was not evidence of their father's indebtedness against these children as heirs, and no lien on the land they inherited from him. *Saddler* v. *Kennedy*, 26 W. Va. 636. By means of a suit in equity, William McKay or his representatives might have reached the land in the hands of the children of Spencer R. McKay for the payment of this debt, but that must have been a suit directed immediately against the land, and to it those children must have been parties, and in it that debt must have been established as though no judgment had been rendered upon it.

It is argued that by our statute lands of a decedent are

made liable for his debts, and that the said judgment was binding as to the personal estate of Spencer R. McKay, and that the effect of the judicial sale of this land was to convert it from real into personal estate, and that thus this debt became binding on the proceeds of sale, and William McKay's estate had the right to set off this debt in its favor against the money arising from such judicial sale paid into his hands as guardian; in other words, pay the debt coming to him out of said money, because it came from Spencer R. McKay's land. I fail to see any force in this proposition. Spencer R. McKay in his lifetime owned, and died owning, it as land, and as to his creditors it remained after his death as land, and passed to his heirs by descent cast as land, and they had title vested in them by descent, and creditors could follow it for their debts only in the mode pointed out by law for subjecting realty of which a decedent dies seized in the hands of his heirs. If this sale effected any conversion from realty to personalty, that conversion took place after Spencer R. McKay was dead, and had lost title, and the conversion was not of his property *quoad* his creditors. In fact, the heirs being infants, it was no conversion of land into money as their property, but it remained realty. *Turner* v. *Dawson*, 80 Va. 841; *Vaughan* v. *Jones*, 23 Gratt. 444; 3 Pom. Eq. Jur. § 1167, note 1, page 136. So, though this judgment dates after this judicial sale, and though William McKay had been Spencer R. McKay's administrator as suggested (but it does not appear that he was) this judgment can not be credited against the infants. Neither William McKay nor his administrators could assume to charge this fund with the debt due William McKay from Spencer R. McKay, and thus perform the function of a decree to administer the real assets of Spencer R. McKay as if in a suit regularly brought and proceeded in for that purpose. Other creditors of Spencer McKay might have had an equal or superior claim against the land. This suit could not have been converted into a creditor's suit for a convention of the creditor's of Spencer R. McKay. Indeed, there was no evidence to show even *prima facie* that his estate owed anything to William McKay against the property descending to his heirs. The

judgment upon the suggestion directing the administrators of Wllliam McKay to pay what was in their hands, which, but for said first judgment, as this judgment states, would have gone to Spencer R. McKay's estate, to satisfy the said first-mentioned judgment, can add nothing to the claim of William McKay's administrator to use the money arising from the land to pay said judgment. That judgment was in its terms, and according to law, payable out of the assets of Spencer R. McKay in the hands of Rueben Douglass, his administrator. Those assets did not include the proceeds of the sale of the land, and this judgment was not payable, as such, out of such proceeds. The suggestion was simply a proceeding to enforce the lien of the execution on said judgment, and that execution could not reach property not liable for the payment of the judgment on which it issued, and the suggestion or the judgment on it could go no further. Can it be pretended that this proceeding to which these heirs were strangers could have the effect to affect real assets descended to them? That would give to this judgment on the suggestion the force to operate as evidence of debt against the heirs, contrary to the rule above stated, that a judgment against the personal representative is no evidence of debt against the heir, and give it also the force of a chancery suit to directly subject real assets to the debt of a decedent. But, in addition, there was no authority of law for this suggestion proceeding against an administrator. Drake Att. § 499.

Defendants except to the report, because it does not credit a receipt of Reuben Douglass, dated April 13, 1883, for $400.00, paid by one of the administrators "on the distributive share and portion of the personal estate of said William McKay, which belongs to Florence McKay and Mamie McKay, infant children of S. R. McKay, deceased, and which they take as children of S. R. McKay, who was a son of William McKay." This paper says that the $400.00 was paid on the distributive share of William McKay's personal estate belonging to these children, as children of Spencer R. McKay; that is, on their share as distributees in the net surplus of the personal estate of William McKay after payment of his debts. So the law construes it. The

debt due from William McKay, as guardian, was a debt—a preferred fiduciary debt—which must be paid before there could be any surplus fund for distribution among distributees. The one was going to Florence and Mamie McKay, as debts due them as wards of William McKay. Their interest in such surplus, after payment of debts, would be due them on another ground; that is, as distributees in the net surplus of the personal assets of William McKay, which never vested in their father, who died before his father, the said William, This receipt does not give a hint that it was paid Reuben Douglas as their guardian on what was due said infants from William McKay as guardian. Whatever may have been the intent or actual character of this payment, thus speaks the receipt, and W. H. McKay's deposition throws no other light on it. I do not see how it can be allowed on this guardianship account.

As to the exception to the report because of failure to allow a receipt of March 7, 1883, given by Reuben Douglass, guardian, to W. H. McKay, one of the administrators, for $541.45, paid as eight and one half fifteenths of the rents, issues, and profits of the Rachel Radcliff land in the Warths bottom, and the interest thereon to date, which went into the hands of said William McKay, as guardian of Florence and Mamie McKay, infant children of S. R. McKay, deceased, as shown by a statement made by said William McKay in his lifetime with a commissioner of the county court as guardian of said children. The deposition of W. H. McKay shows that, as guardian, William McKay controlled this Radcliff land, and this receipt states that it was in his hands, and, as the receipt says, William McKay accounted to a commissioner for what he had received of rents and profits from it to this amount, and in payment of such rents and profits this money was in terms paid. The bill sought to charge William McKay only with moneys specifically coming from the sale of the land, and nothing else, and the report on which the court decrees did not charge rents and profits of the land to his estate. This receipt was property disallowed in this account.

It is assigned as error that the Court overruled an exception to an answer filed by Florence McKay by her next

friend, and allowed it to be filed, and decreed thereon. This answer alleged that Florence McKay was a daughter of Spencer R. McKay, and that he died in 1874, seised of six and one half sixteenths of the Radcliff farm, leaving surviving him a widow, and Mamie and Florence McKay, his only children; that afterwards, her grandfather, Douglass, purchased two interests therein, and caused them to be conveyed to her and her sister and mother, to be held as though it had descended from the respondent's father; that said farm was sold under decree in a suit, wherein she and others were plaintiffs, and Simon Williams defendant, and that William McKay purchased it; that respondent and her sister owned eight and one half sixteenths; that William McKay, as guardian of her sister and herself, received about $3,000.00 for their interests in the proceeds of the sale of the farm, half of which belonged to her, Florence; that he managed and controlled the farm for several years before its sale, and received rents and profits, for which he made a settlement, and that his administrators had accounted with their then second guardian, Douglass, for the same, by paying $541.15 on March 7, 1883; but that neither William McKay nor his administrators had accounted for these proceeds of the sale of the farm, and that no settlement had ever been made of the guardianship as to them. The answer prayed that such an account might be taken and such proceedings had in this suit as would protect her interests, and collect and pay her what was due her.

The objection to this answer is that it could not be the basis of a decree for Florence McKay in this suit; that the bill makes no reference to her, further than to allege that, of the moneys in it specified as paid to William McKay, one half belonged to Mamie and one half to Florence McKay; that, for aught that appears in the bill, Florence might have been of age, and had no guardian, and that the money might have been paid to William McKay as her agent; that the bill does not show she had any interest in the suit, and she should not have been made a party. We are told that Florence had no interest in this suit, and that *Chapman* v. *Railroad Co.*, 18 W. Va. 184, holds that "where it does not appear in the pleadings, or otherwise in the case, that

a person has an interest in the subject-matter of the suit, he is not a necessary party." Also *Moseley* v. *Cocke*, 7 Leigh, 224. But, as to this argument, I think the bill shows that she is so connected with the matter as to make her a proper and necessary party, for the reason that it states that one half of the moneys paid to William McKay belonged to Florence McKay. When Mamie McKay sued for her share in this fund, was it not necessary for her to make her sister a party as part owner of a fund belonging in common to them? Would not the custodian of the fund be justified in requiring her to be made a party in order that it be determined what share the plaintiff had—one half, one fourth, or what share—so that Florence could never after demand a greater share than that treated by the decree as hers? As to her being a proper party, I have no doubt. I did, however, have some doubt, in my first impressions, whether, though she was a proper party as incidental to relief to Mamie McKay, she could make this suit, brought to settle the account of the guardian of Mamie McKay only, and not averring that William McKay had been guardian of Florence, a suit also to settle the accounts of the guardian of Florence; being disposed to think that, as the guardianship of Mamie was distinct from that of Florence, it not even appearing that he gave one bond as guardian for both, if that be material, each had a separate and distinct cause of action, each a right to claim distinct money, and that each could and must bring separate suits, though the money of both came from the same source, and was paid in solid sums to the guardian at the same time; but other members of the Court see no question as to this, and further reflection satisfies me that no prejudice or surprise can be done by this proceeding at least, and that perhaps it is consistent with proper equity practice. It is argued in the brief for appellants that where the equities, as between defendants, do not arise out of the pleadings and proofs between the plaintiff and defendants, there can be no decree between co-defendants. *Blair* v. *Thompson*, 11 Gratt. 441; *Vance* v. *Evans*, 11 W. Va. 342; *Watson* v. *Wiggington*, 28 W. Va. 534; *Ruffner* v. *Kerchival*, 14 W. Va. 737.

There have been many decisions touching this matter, and

it is somewhat difficult to draw the exact line between cases where there should be and those where there should not be a decree between co-defendants. Bart. Ch. Pr. 805. Where the pleadings and proof show no right of the plaintiff to relief against any defendant, there can not be a decree between co-defendants. *Hansford* v. *Coal Co.*, 22 W. Va. 70; *Hubbard* v. *Goodwin*, 3 Leigh, 522. But here the case shows a right to a decree in favor of the plaintiff against the administrators of McKay. It is well settled that where a case is made out between co-defendants, by evidence arising from pleadings and proofs between plaintiff and defendant, it is the duty of a court of equity to make a decree between co-defendants in order that such defendants shall not be obliged to litigate such case in another suit. *Roots* v. *Salt Co.*, 27 W. Va. 483; *Burlew* v. *Quarrier*, 16 W. Va. 108. Here the proof between plaintiff and defendants shows clearly that William McKay, as guardian of both Mamie and Florence McKay, received at the same times lump sums for the common benefit of both. The bill shows that he received the same sums, at the same times, and from the same source, and for the common benefit of both. Thus far the pleadings and proof make out a case up to this rule, only the bill does not expressly say that he received this money as guardian of Florence, or that he was her guardian. This answer of Florence avers these facts, thus bringing them into the record. When the cause was heard it was heard on this answer, unreplied to, as the decree states, though it prayed for relief. It could have worked no surprise to the defence, for the defendants knew of it, as exceptions were made to it by them; and after it was filed, and upon the bill and this answer, a reference was made to a commissioner to settle the accounts of William McKay as guardian of both infants, and both accounts are stated in the report on which the decree is based; so that the defence had full opportunity and time to meet the case made by both the bill and this answer. It worked no prejudice, but rather benefit, to the defendants, to close both guardianships as to this fund in one suit, rather than put the estate of McKay to the costs of a new suit. Where, as in this cause, no surprise and no prejudice is done by making one suit end all matters connected with the subject-

matter between all parties to it, courts of equity, in order to avoid multiplicity of suits and protraction of litigation, should be liberal in so doing. ·Each case must largely stand on its own facts in this regard. No very certain rule can be given to suit all cases.

It is assigned as error that the amended and supplemental answer of W. H. McKay, administrator, was rejected. He had before filed an answer. There was no explanation of why this amended answer was delayed, or its new facts not incorporated into the original answer. In *Matthews* v. *Dunbar*, 3 W. Va. 138, it was held that before an amended answer should be allowed, the court "should be satisfied that the reasons assigned for it are cogent and satisfactory; that the mistakes to be corrected or facts to be added are made highly probable, if not certain; that they are material to the merits of the case in controversy; that the party has not been guilty of gross negligence; and that the mistakes have been ascertained and the new facts have come to the knowledge of the party, since the original answer was filed." To same effect, *Wyatt* v. *Thompson*, 10 W. Va. 645; *Tracewell* v. *Boggs*, 14 W. Va. 254; and opinion on page 59 of 26 W. Va., in *Sturm* v. *Fleming*. This amended answer was excepted to, because it gave no reason for delay in filing it, and contained immaterial matter. This amended answer did aver, as new matter not contained in the original, that William McKay, as guardian, expended large sums for the education and maintenance of the two wards, and claimed credit therefor against any demand the wards might have. The answer of Z. T. McKay, one of the administrators, was allowed to be filed by the same order by which this amended answer was rejected, and the cause was heard on it, and it sets up this same matter; so that under this answer the estate could have had the benefit of such matter. Besides, as a part of the process of accounting, such expenditures could have been presented and relied on before the commissioner. It seems to me that no prejudice to the defence arose from this action of the court as to this new matter. This amended answers sets up, as further new matter, the judgments above mentioned—that in favor of William McKay's administrators against Spencer R. McKay's administrator for $2,514.14, and

that based on it rendered on a suggestion. But these judgments were set up almost in the same language in the said answer of Z. T. McKay, administrator; and besides, for reasons above given, this matter was immaterial and irrelevant, and could not avail the defence. There is no other new matter in the answer, and I think there is no error in its rejection. Appellants complain that they are charged with compound interest after the death of William McKay. This is true, and it is erroneous, because section 10, c. 82, Code 1887, provides for the charging of compound interest against guardians only during the continuance of the trust; and section 7 of same chapter contemplates that the guardianship shall cease at the death of the guardian. In *Armstrong* v. *Walkup*, 12 Gratt. 608, it was held that where the trust of guardianship is terminated by the guardian's death, only simple interest should be charged from that event on any balance then in his hands. *Garrett* v. *Carr*, 1 Rob. (Va.) 196; 1 Minor, Inst. 455. It seems that it was so before the statute. *Garrett* v. *Carr, supra; Cunningham* v. *Cunningham*, 4 Gratt. 43. An examination of the account shows that this error prejudices the defendants more than $100.00. I note, besides, some items in the account which I regard as errors in items of profits charged, perhaps inadvertently. While it appears that William McKay died in 1882, the exact date does not appear.

It becomes necessary to remand the cause, in order that the account may be restated according to the principles herein indicated. Therefore the decree of the 9th day of August, 1889, is reversed, with costs to appellants against Mamie McKay and Florence McKay, and the cause is remanded for further proceedings according to the principles herein indicated.

REVERSED. REMANDED.