# CHARLESTON

## LOAR *v.* WILFONG.

### Submitted June 10, 1907.    Decided January 14, 1908.

1. EQUITY—*Pleading—Demurrer.*

   Upon a demurrer to a bill, only the bill itself together with the exhibits filed therewith can be looked to to ascertain its sufficiency. (p. 313.)

2. SPECIFIC PERFORMANCE—*Pleading—Averment of Title.*

   In a suit for specific performance of an agreement in writing to convey to the vendee a certain tract of land on terms named and the vendee placed in possession thereof, an allegation in the bill that the vendor "being or pretending to be seised and possessed in fee simple of the land," describing it, "and being so seised, on that day to-wit," &c., is a sufficient averment of title to the vendor. (p. 312.)

3. EQUITY—*Pleading—Supplemental Answer.*

   In such suit when the defendant (the vendee) has filed an an-

swer denying the making of such agreement either written or verbal, and relying upon that defense alone, and where depositions have been taken on both sides and the cause submitted by consent of the parties for final hearing and determination, the defendant will not be permitted to file an amended or supplemental answer setting up an entirely new and different defense from that of his original answer, he having knowledge of all the facts at the time of filing his original answer. (p. 316.)

4. SAME.

The affidavit of the attorney who prepared both answers for the defendant "that the new matter appearing in the supplemental answer was not known to him (the attorney) at the time of the preparing of the original answer, that a full knowledge of the facts in this case were only revealed or made known to him after the filing of the original answer" is not sufficient to warrant the filing of such supplemental answer. (p. 316.)

Appeal from Circuit Court, Monongalia County.

Bill by William A. Loar against John Wilfong. Decree for plaintiff and defendant appeals.

*Affirmed.*

CHAS. H. LEEDS, for appellant.

GLASSCOCK & GLASSCOCK and COX & BAKER, for appellee.

MCWHORTER, JUDGE:

This was a suit in chancery brought by Wm. A. Loar against John Wilfong in the circuit court of Monongalia county for the purpose of enforcing specific performance of the following contract:

"To William A. Loar:

I hereby acknowledge that as part of the consideration of the deed made for 9 3-4 acres of coal on Flaggy Meadow Run, this day made by yourself and wife to me I am to convey to you by deed of General Warranty a tract of land lying between your land and with the lines of my land and the crop of the Pittsburg vein of coal, with the understanding that I am to receive Fifty Dollars for the same and herewith agree and bind myself to make a deed for the same within ten days.

Given under my hand this 11th day of March, 1903.

his<br>
JOHN X WILFONG<br>
mark

Witness, W. T. Poughner.

State of West Virginia,

County of Monongalia, ss.:

I, P. W. Low, a Notary Public within and for the County of Monongalia, and State aforesaid, do certify that John Wilfong did execute, sign and deliver the foregoing writing, in my presence on March 11th, 1903.

P. W. Low, Notary Public.

State of West Virginia, ss.:

Produced to me, John M. Gregg, Clerk of the County Court of Monongalia County, in my office, and was then and there admitted to record on the 18th day of April, 1903.

Attest:                         JOHM M. GREGG, Clerk."

Plaintiff exhibited with his bill the said contract together with a plat and survey of the land agreed therein to be conveyed, which survey described the land by metes and bounds and as containing 7.8 acres. The bill alleged that plaintiff and his wife had conveyed, on the same day that said agreement bears date, to the said Wilfong 9 3-4 acres of Pittsburg vein of coal, and that in addition to the consideration mentioned in the deed from plaintiff for said coal the said defendant was to convey this 7.8 acres of land as a part of said consideration, said plaintiff to pay to defendant $50 thereon; and praying that the said defendant might be decreed specifically to perform his said agreement and to make a good and sufficient deed to plaintiff for the described premises, that plaintiff was ready and willing and offered specifically to perform his agreement on his part and on the execution of a proper conveyance to the plaintiff pursuant to the terms of the agreement to pay to the defendant the residue of the purchase money, that the defendant be compelled to produce in court the deed or copy thereof executed by plaintiff on the said 11th day of March, 1903, to the said defendant for 9 3-4 acres of coal, said deed never having been recorded, and for general relief.

Defendant filed his demurrer to the said bill which was overruled and the defendant was granted leave to file his answer within forty days, and like leave granted to plaintiff to file his replication thereto within ten days in the clerk's office.

On the 16th day of November, 1903, the defendant Wilfong filed his answer admitting that he was seised and pos-

sessed of the tract of 7.8 acres on the 11th day of March, 1903, but was unable to say whether or not the courses and distances alleged in plaintiff's bill as shown by the survey were correct and denied the making of said agreement or any agreement written or verbal for the sale to plaintiff of said land; and denied that he, on said 11th day of March, 1903, or any other day, agreed to sell or convey to plaintiff said land "in consideration of a deed that day executed and delivered to defendant, for 9 3-4 acres of the Pittsburg vein of coal underlying lands of plaintiff situate on Flaggy Meadow Run, in Grant District, and the sum of $50.00," as plaintiff in his bill has alleged; but averred that it was true that on the 11th of March, 1903, he agreed to and did purchase from plaintiff the Pittsburg vein of coal underlying the 9 3-4 acres of land on Flaggy Meadow Run for the sum of $998.03, $550 to be paid in cash and defendant to execute and deliver to plaintiff notes for the residue; that he paid said $550 and executed the notes for the residue, which cash and notes plaintiff accepted on that day and executed and delivered to defendant a general warranty deed for said coal, which deed is copied in and made a part of the answer. And denied the allegation of plaintiff's bill that at the time of the execution of said deed by plaintiff to defendant for said coal there was any agreement or understanding between them that said sum of —— dollars was not a full and adequate consideration for the coal, but averred on the contrary that said sum was agreed upon by the parties as a full and sufficient consideration therefor and that no other consideration was mentioned at the time of the execution of said deed.

On the 30th day of June, 1904, by consent of the parties, the cause was submitted to the court for final hearing and determination and the court took time to consider of its decree. On the 15th day of November, 1904, on motion of the defendant, he was granted leave to file a supplemental answer and the cause was remanded to rules for that purpose, to the entering of which order the plaintiff objected and protested. And at rules in the clerk's office on the first Monday in January, 1905, the defendant filed his supplemental answer in the cause. The plaintiff, by counsel, ob-

jected and excepted to the said supplemental answer; first, because the same was tendered and filed after a decree had been entered in the cause by consent of plaintiff and defendant submitting the cause to the court for final hearing; second, because said alleged supplemental answer was not in fact a supplemental answer but an amended answer; and third, because the whole of said supplemental answer was impertinent, irrelevant and immaterial, and because the alleged facts therein stated, if true, were known to the defendant at the time of the institution of this suit and before and at the time of the filing of the original answer in this cause. And made further exceptions to special parts of said answer in the same nature as the exceptions just stated; and further objected to the filing of the supplemental answer because the filing of the same would be without authority of law, and moved that the same be stricken out.

Depositions were taken and filed in the cause by both plaintiff and defendant, the last of the depositions being closed in June, 1904. The affidavit of Charles H. Leeds, counsel for defendant, was filed in open court on the 10th of February, 1905, in support of the supplemental answer of the defendant, which affidavit was to the effect that he, as counsel for defendant, had prepared the answer and supplemental answer filed in the cause and " that the new matter appearing in the supplemental answer was not known to him at the time of the preparing of the original answer, that a full knowledge of the facts in this case were only revealed or made known to him after the filing of the original answer;" which was all that was offered in support of the filing of said supplemental answer.

The cause was brought on to be finally heard on the 17th day of February, 1905, upon the bill and exhibits, the original answer of the defendant and general replication thereto, the depositions of witnesses taken on behalf of plaintiff and defendant filed and read, the supplemental answer of the defendant filed in the clerk's office at January rules, 1905, the affidavit of C. H. Leeds, counsel for defendant, filed in support of said supplemental answer, and on motion of plaintiff to strike said supplemental answer from the cause, and upon the exceptions to depositions,

and also defendant's exceptions to the filing of exhibit No. 2 by the plaintiff, all of which exceptions were in writing and made a part of the record; when the court was of opinion that no reason appeared why the new matter alleged in the supplemental answer was not stated in the original answer and that the said supplemental answer should not have been filed, that the exceptions taken by defendant to the depositions of plaintiff and to the filing of Exhibit No. 2 were not well taken and were overruled; and that upon the bill, original answer, general replication thereto and the proof in the cause proper to be read and considered under the pleadings, the cause was for the plaintiff; and decreed that the defendant, John Wilfong, make, acknowledge and deliver to plaintiff a deed for the said 7.8 acres of land more or less within sixty days from the adjournment of that term of court, and appointed a commissioner to make such deed on the failure of defendant to do so. ·

The plaintiff paid into court the sum of $55.85 being the $50.00 to be paid under the contract, Exhibit No 1, and interest thereon.    From which decree the defendant appealed and says the court erred in overruling his demurrer to the plaintiff's bill in sustaining exceptions filed by plaintiff to the depositions of defendant; in overruling the exceptions filed by the defendant to the depositions of plaintiff; in striking from the record the supplemental answer filed by the defendant; and in entering the decree.

The first assignment of error is the overruling of the demurrer to the plaintiff's bill.    The contract signed by the defendant, dated March 11, 1903, upon which the bill is founded appears to be specific in its terms and together with the plat of the land describing it by metes and bounds, filed with the bill as exhibit No. 2, makes it certain as to the description of the land agreed to be conveyed by the contract, exhibit No 1.

It is contended by appellant that the bill is defective in that it does not sufficiently allege ownership of the land contracted to be conveyed by the Exhibit No. 1; that the allegation that "on the 11th of March, 1903, the said John Wilfong being, or pretending to be seised and possessed

in fee simple" of the land described makes the bill defective as it should allege a good title in the defendant, and cites as authority therefor 20 Enc. Pl. & Pr. 452, note 1, where several authorities are cited. The only authority favorable to the defendant is that of *Manton* v. *Ray*, 18 R. I. 672, which was a suit in equity to enforce the specific performance of a contract to convey personal property—stock in an incorporated company—where it was held that the bill must allege that respondent was the owner of the stock agreed to be conveyed, that an allegation that the respondent " being or pretending to be possessed of or otherwise entitled to certain shares of stock" did not amount to an averment of ownership, and rendered the bill demurrable. In the opinion of the court it is said: "The general rule is that a court of equity will not order the specific performance of a contract for the sale of personal property because ordinarily there is an adequate remedy at law. *Chafee* v. *Sprague*, 16 R. I, 189. Moreover, as to most kinds of personal property and many stocks, a similar purchase can be made in the market, so that a bill for specific performance is needless. But this rule is neither inflexible nor without exceptions. Cases which involve trusts are recognized exceptions." On the other hand, we find cited in the same note, *Cottrell* v. *Cottrell*, 81 Ind. 87, where it is held: "A complaint against the heirs of a deceased vendor, for a specific peformance of his parol contract, need not allege that the ancestor had any title to the property which he agreed to convey." That was a contract for the conveyance of real estate and in the discussion of the demurrer the court says: "There are facts stated which show some title in the decedent. It certainly appears that his title was sufficient to put and keep the appellee in possession of the land for many years. If the appellee is content with such title as the conveyance from the heirs of the deceased vendor will convey the appellants should not be allowed to prevent him from securing it. The ancestor had bargained away all the title he had, and, whether that was much or little, the appellee's contract vested in him a right to have that for which he had contracted. It can not be of importance to appellants whether that title was perfect or imperfect, for the appellee has a ·

right to it, whatever its character may be." See also *Moore* v. *Burrows*, 34 Barb. (N. Y.) 173; *Ide* v. *Leiser*, 10 Mont. 5, 24 Am. St. 17; *Rice* v. *Bush*, 16 Colo. 484; *Northrop* v. *Boone*, 66 Ill. 368. The authorities distinctly recognize a difference between a contract to convey personal property and real estate.

It is contended that the bill is inconsistent in that in the first part of the bill it alleges an agreement whereby the parties were to exchange lands and plaintiff to pay defendant a bonus of $50, and in the latter part of the bill it is admitted that this is not true but that he (Loar) received a consideration from Wilfong for this 9 3-4 acres of Pittsburg coal claimed to be exchanged in manner as before stated and that Wilfong was to make him a deed for the 7.8 acres in addition to the consideration plaintiff had received for the coal. We see no inconsistency in this. The contract sued upon is an agreement to convey a certain tract of land as part consideration of the deed made for the 9 3-4 acres of Pittsburg vein of coal.

The third objection to the bill was that it called for the deed of March 11, 1903, conveying the 9 3-4 acres of coal to defendant and when produced with the answer it was found to contradict the bill. This could not be shown upon demurrer but with a proper answer raising a sufficient issue it might prove a good defense upon the merits of the case. Upon the demurrer the question is, admitting the truth of all the allegations of the bill, is the bill sufficient to sustain the plaintiff's contention and a decree in his favor.

The fourth objection to the bill on the demurrer is that Exhibit No. 1 does not describe the land with such certainty as is required in an action for specific performance, citing *Ensminger* v. *Peterson*, 53 W. Va. 324. Exhibit No. 1, the contract, is assisted by the survey filed with the bill as exhibit No. 2, showing the description of the land by metes and bounds, which makes the description amply sufficient for the purposes of the bill. Whether the survey was properly made by the parties to the suit, or after due notice thereof is a matter of defense upon the merits of the cause upon proper pleadings. The map of the survey was made part of the bill and was good and proper on its face

and in connection with the contract, Exhibit No. 1, made an apparently complete description of the land to be conveyed under the contract. The demurrer to the bill was properly overruled.

The defendant filed his answer denying the making of the contract, filed with the bill as Exhibit No. 1, and rested his whole defense upon such answer, but failed to make an affidavit denying the making of said contract as required under section 3860, Code 1906 (chapter 125, section 40). The answer of defendant not being sworn to failed to put in issue the making by the defendant of the contract of March 11, 1903, as alleged in the bill and it must be taken as true. *Robinson* v. *Dix*, 18 W. Va. 528; *Maxwell* v. *Burbridge*, 44 W. Va. 248. But the making of the contract is fully sustained by the evidence taken in the case.

The remaining question involved here is, did the court err in striking out the defendant's answer? By the original answer the defendant made the one defense that he did not make the contract sued on, no other defense was offered or suggested. After the evidence had been taken on both sides in the cause and the consent order entered on the 30th of June, 1904, submitting the case to the court for final hearing and determination, defendant asked and was granted leave, over the objection of plaintiff, to file a supplemental answer, which answer was filed at the January rules, 1905. The supplemental answer was wholly inconsistent with the original answer, offering a different defense. The said supplemental answer avers that after several years of negotiations he agreed to sell to plaintiff the surface of the strip of land in question; that it seemed plaintiff was desirous of purchasing said strip to avoid the building of a line fence between his and the defendant's land, there being an high cliff or precipice at the outcrop of the Pittsburg vein of coal which would serve as a fence, and at the time the defendant conveyed the coal to plaintiff, plaintiff again mentioned this narrow strip and expressed his desire to purchase as he had frequently done before. "Defendant then offered to sell to the plaintiff the said strip, to-wit: the parcel lying between the outcrop of the Pittsburg coal and the plaintiff's land, excepting therefrom the coal and all minerals

and mining rights and privileges, and timber for the said sum of $50,00, provided the transaction was closed within ten days; and that the said sum could be paid in cash to the defendant, by the plaintiff, or could be credited on the note which the defendant had that day executed to plaintiff to evidence the deferred payment of the purchase money named in the deed for the said coal which plaintiff had that day executed to the defendant, that nothing further or more definite as to any contract was arrived at between the parties; that the said Loar demanded a memorandum in writing showing the defendant's willingness to convey according to the terms as aforesaid, the said surface of said strip of land, and the defendant being unable to read or write, appointed W. L. Boughner to write a memorandum according to the terms by him stated herein, and as defendant understood at the time of the transaction his offer embraced; that said Boughner hurriedly wrote a memorandum and defendant signed it with his mark, but this defendant is now informed that said memorandum does not contain his offer as made to the said Loar, the plaintiff, or what he, the defendant, had agreed to do."

Thereby admitting the making of the contract which in his original answer he had denied ever making, but claiming that it did not contain the contract as agreed upon between them. Exceptions were filed to said answer as a whole and every part thereof as inconsistent with the former answer.

In *Mathews* v. *Dunbar*, 3 W. Va. 138, it is held: "When pleadings are verified by the oath of the party, the court will not easily suffer an amendment. And before a court of equity should allow an amended answer to be filed, it should be satisfied that the reasons assigned for it are cogent and satisfactory; that the mistakes to be corrected or facts to be added are made highly probable if not certain; that they are material to the merits of the case in controversy; that the party has not been guilty of gross negligence, and that the mistakes have been ascertained and the new facts have come to the knowledge of the party since the original answer was filed." In *Gouveneur* v. *Elmendorf*, 4 John. Chy. 367, it is held: "When there has been very great delay and negligence on the part of the defendant, he will not be

allowed * * * * to amend his answer, nor to file a supplemental answer, nor to issue a commission so as to delay the plaintiff." Story's Eq. Pl.. section 896: *Bowen* v. *Cross*, 4 John Chy. 275; *Elder* v. *Harris*, 76 Va. 187; *Tracewell* v. *Boggs*, 14 W. Va. 254. And in *Foutty* v. *Poar* 35 W. Va. 70, the rulings of the Court in *Mathews* v. *Dunbar*, *supra*, in relation to the filing of an amended answer are re-iterated and approved. And in *Goldsmith* v. *Goldsmith*, 46 W. Va. 426, it is held: "An amended answer should not be allowed, raising new issues, where it appears the party knew the facts when he filed his first answer, and is thus guilty of negligence." This principle has been re-asserted also in *Miller* v. *Mitchell*, 58 W. Va. 431. Thus, we see, by a long line of decisions it has been held not only by courts of other states but by many decisions of our own Court that it must be shown in an amended or supplemental answer, attempted to be filed to correct mistakes in former answer, that such mistakes were ascertained and the new facts came to the knowledge of the party after the original answer was filed. In case at bar, if the facts ever existed as set out in the amended or supplemental answer, they must necessarily have been known to the defendant when the original answer was filed. It is nowhere claimed that the defendant was not in possession of all the facts when his first answer was filed. There is no excuse presented for filing a different answer from the first except the affidavit of the attorney who prepared both of said answers, who filed an affidavit to the effect that he (the attorney) was not cognizant of the existence of the facts as set out in the last answer at the time he prepared the first answer. The defendant himself does not dispute that he knew all the facts in the first instance. The court did not err in striking out the so-called supplemental answer.

The objections of the plaintiff to the depositions and parts of depositions taken by the defendant were properly sustained because they were taken to support the theory of the defendant set up in his supplemental answer, there being no proper pleadings filed in the case, or issue made upon which to base such depositions.

For the reasons herein stated, the decree of the circuit court must be affirmed.

*Affirmed.*