# WHEELING.

## REXROAD *v.* McQUAIN *et al.*

Submitted September 10, 1883—Decided April 19, 1884.

1. It is a cardinal rule in equity that all persons materially interested either legally or beneficially in the subject-matter of the suit, must be made parties to the suit. (p. 35.)

2. In a suit in equity brought by one legatee against the adminis-
trator of the testator to have his legacy paid, when the fund out
of which it is to be paid is not definitely ascertained, all the
legatees having an interest in such fund must be made parties
to such suit.   (p. 35.)

The opinion of the Court contains a statement of the
facts of the case.

*George A. Blakemore* for appellant.

*W. H. H. Flick* for appellee.

SNYDER, JUDGE:

Suit in equity brought August, 1871, by Solomon Rexroad
against George McQuain in the circuit court of Pendleton
county to recover the proceeds of certain personal property.
The plaintiff avers in his bill that his father, Jacob Rexroad,
died testate in 1861, possesed of considerable personal prop-
erty; that by his will he bequeathed to him, the plaintiff, all
his live stock, his household and kitchen furniture, farming
implements, mill irons and two slaves; that the estate with
the will annexed was committed to the defendant for admin-
istration, on October 3, 1861, by an order of the county court
of said county then acting under the seceded State govern-
ment of Virginia, at Richmond, the defendant being the
sheriff of said county under said seceded government; that
as such administrator the defendant took possession of said
estate, had the property appraised and sold, but has never
made any settlement of his transactions as such administra-
tor or accounted to the plaintiff for any part of said property
or its proceeds. He prays that the defendant may be required
to settle his transactions upon said estate so far as they affect
the property bequeathed to the plaintiff before a commis-
sioner and that he may recover any balance due him and
have general relief.

Johnson Sites was on his own petition subsequently made
a party defendant to the cause and filed his answer, in which he
states that in 1867, he was sheriff of Pendleton county, and
that by an order of the county court the estate with the will
annexed of said Jacob Rexroad, deceased, was committed to
him as such sheriff for administration, but no estate has ever

come into his hands and he has done nothing as such administrator.

In April, 1872, the defendant, McQuain, filed his answer in which he admits the material allegations of the bill, but denies that the plaintiff is, under the will of his father, entitled to all the personal property of the testator or the proceeds. He says said property was sold to pay the debts of the estate and denies that the plaintiff is entitled to recover anything from him on account of said property.

The cause was referred to a commissioner to settle the respective administration accounts of the defendants McQuain and Sites upon said estate. After several recommittals, the commissioner filed his final report, dated August 9, 1877, in which he finds a balance of three hundred and eighty-eight dollars and fifty-eight cents due from defendant McQain, to the plaintiff on account of the proceeds of the property bequeathed to the plaintiff and seventy-two dollars due from said defendant on account of the other property which came to his hands.

McQuain excepted to this report, but in the view this Court takes of the case it is unnecessary to state his exceptions.

The court, on April 28, 1880, after deducting the interest for the period of the war from the amount found by the commissioner in favor of the plaintiff against McQuain, overruled the exceptions, confirmed the report, except as to said interest, and gave a decree for three hundred and fifty-one dollars and twenty-two cents with interest and costs in favor of the plaintiff against the defendant McQuain, but made no order whatever in reference to the seventy-two dollars mentioned in the commissioner's report. From this decree McQuain appealed.

It appears from the will of the testator, exhibited in this cause, that he had five children all of whom are devisees or legatees by the will. The testator disposes of all his lands and the greater part of his personal property specifically, but a part of his personal property and the debts due him, if any, he makes no specific disposition of and this part of his estate would necessarily pass in equal portions to all of his children subject to the payment of his debts. All the said children

were, therefore, necessary parties to this suit. It is true that the testator declares in his will that all his heirs shall pay an equal part of his just debts, but this does not release the administrator of the estate from liability to the creditors to the extent that assets came into his hands. The creditors have a right to look to the administrator notwithstanding the charge to which the testator has subjected the property willed to his children.

The evidence shows that the testator was considerably indebted at the time of his death and nothing appears to show that this indebtedness had been discharged. From the great length of time that has elapsed, it may be possible that these debts have been paid, but if so, it is not disclosed by whom they were paid.

While a legatee whose legacy has been consented to by the executor may sue the executor for it at law without joining the other legatees—*Brown* v. *Ricketts*, 3 Johns. Ch. 553— still, where the fund out of which the legacies are to be paid proves insufficient or is subject to debts, which requires a proportional abatement from each legatee, all the legatees must be parties. *Richardson* v. *Hunt*, 2 Munf. 148; *Sheppard* v. *Starke*, 3 *Id.* 29; *Sillings* v. *Bumgardner*, 9 Gratt. 273.

In this cause none of the legatees, except the plaintiff, were parties and for that reason, I suppose, the seventy-two dollars reported by the commissioner were not decreed to any one. It is evident that this sum should have been applied in some way. But as no debts were reported against the estate and the legatees were not before the court, no proper disposition could have been made of it. It is a cardinal rule in equity that all persons materially interested, either legally or beneficially, in the subject-matter of a suit must be made parties in order that complete justice may be done to the rights of all such parties in one suit—Story's Eq. Pl. § 72. It was, therefore, error for the court to proceed in this cause without having required the plaintiff to amend his bill by making all the legatees parties.

McQuain was a lawful administrator—*Clay* v. *Robinson*, 7 W. Va. 348; *McClure* v. *Johnson*, 14 *Id.* 432. But he having become such administrator while the war was flagrant and Confederate money was the general currency in circulation

in Pendleton county, it was not a violation of his duty to sell the property on a credit of ten months to be paid in the currency used by the people of that county in the transaction of their business. The plaintiff seems to have acquiesced in said sale by paying for property purchased for him at the sale in Confederate money. It is proven that the estate was then considerably indebted and some of the creditors were demanding their debts. I do not think, therefore, that the appellant, McQuain, committed any breach of duty in selling the property when and as he did. But having sold the property, it was clearly his duty, when he collected the proceeds, to have paid the same over to the creditors or the legatees or to have shown some legal and valid reason why he did not do so. If the condition of the country was such that he could be present there to sell the property and collect the proceeds, it is not easy to see why he could not also attend there and pay over the money to those entitled. In November, 1862, when the sale-money became due it is not likely that any one in that county would have refused to receive it on debts or in payment of legacies—*Simmons* v. *Trumbo*, 9 W. Va. 358.

It seems, however, that the said administrator did not in fact pay over any considerable part of said proceeds to any one. All he paid, so far as the record here discloses, was certain taxes and the expenses of the sale and a few small debts. In settling his accounts for these transactions, had entirely with Confederate currency, he should be charged and credited with the full amount received and paid out without scaling either the debits or the credits. *Estill & Eakle* v. *McClintic*, 11 W. Va. 399.

If said administrator is properly chargeable for that part of the proceeds of said sale which he failed to disburse in Confederate money, but which was paid to him in that currency, as it seems from the facts now before us he is so chargeable, what is the extent of his liability? As the proper parties are not before the court it is not intended to decide, by what we have said or may say in this connection, whether the administrator is or is not chargeable for all or any part of the money belonging to said estate which became worthless on his hands. It is merely intended to decide the extent of his liability in case he is ultimately found to be properly

chargeable with said fund.   As we have held the sale of the
property was legal and proper under the circumstances, the
administrator could not be charged with the property as
such but only with the proceeds which was Confederate
money.   These proceeds could not by the terms of the sale
and the tenor of the notes given at the sale by the purchasers
have come into his hands until the 4th day of November,
1862, the time at which the credit given at the sale expired
and the sale-notes matured.   The measure of his liability
then would be the value of the Confederate money which he
then collected or should have collected for the said property.
The said undisbursed proceeds should, therefore, be scaled
as of November 4, 1862, the date of the maturity of the sale
bonds and not as of the date of the sale, except as to such
sums as were collected by him on the day of the sale.   *Jar-
rett* v. *Nickell*, 9 W. Va. 345; *Dearing* v. *Rucker*, 18 Gratt.
426, 438; *Planter's Bank* v. *Union Bank*, 16 Wal. 483.

The said money to be scaled according to the rule laid down
by this Court in *Bierne* v. *Brown*, 10 W. Va. 748.   For the
error aforesaid the said decree of the circuit court must be
reversed with costs to the appellant; and this cause is re-
manded to the circuit court with directions to that court to
permit the plaintiff, if he asks to do so, to amend his bill by
making all the legatees of Jacob Rexroad, deceased, defend-
ants, to have the administration accounts of the defendants
McQuain and Sites, respectively, upon the estate of said Rex-
road fully and finally settled, and for further proceedings
there to be had according to the principles announced in this
opinion.

REVERSED.   REMANDED.