# CHARLESTON.

## GALL v. GALL.

Submitted September 19, 1901.   Decided December 14, 1901.

|     |     |
| --- | --- |
| 50  | 523 |
| 55  | 36  |

|     |     |
| --- | --- |
| 50  | 523 |
| 62  | 409 |
| f63 | 471 |

1. PETITION—*Equity—Amended Bill.*
   Where a petition is filed in a suit in equity by one not a party to it, and whose rights are not mentioned in the bill, and such petition asks relief touching the subject matter of the bill, and such petition discloses an interest in the petitioner in such matter hostile to the claim of the plaintiff, the plaintiff must file an amended bill to bring the petitioner and his claim before the court before there can be an adjudication of the plaintiff's rights. The mere petition does not make the petitioner a party for the purposes of decree.   (p. 525).

2. NECESSARY PARTIES—*Decree—Reversal—Amended Bill.*
   Where necessary parties, as disclosed by the record, are not before the court, a decree affecting their rights will be reversed and the cause remanded for an amended bill bringing them and their rights in, without passing on the merits.   (p. 525).

3. DEFECT IN PARTIES—*Demurrer.*
   One not a party to a bill can make no defense to it by demurrer or answer.   (p. 526).

4. SUBROGATION—*Lien—Parties to Bill.*
   Where a bill seeks subrogation to a lien on land, and there are other persons holding liens on the land in conflict with such claim of subrogation, they must be made parties to the bill. (p. 527).

Appeal from Circuit Court, Barbour County.

Action by A. J. Gall and others against G. W. Gall. J. N. B. Crim filed petition to amend. Denied, and petitioner appeals.

*Reversed.*

MELVILLE PECK, for appellant.

SAM V. WOODS, for appellees.

BRANNON, PRESIDENT:

There was a judicial sale of lands in Randolph County at which George W. Gall, Jr., became the purchaser, and in part payment of the purchase money he drew certain checks on the Tygart's Valley Bank of Philippi, and gave his note with a surety for the balance. Later a suit was brought to resell the land for that note, and the land was sold under the decree in the second suit, and the land realized a sum leaving a surplus after satisfying the debt decreed against it as unpaid purchase money, which surplus is in the hands of the receiver of the court. The said G. W. Gall, Jr., was at the time cashier of said bank, and had executed a bond as such cashier with A. J. Gall and B. M. Gall as sureties therein, and he defaulted as such cashier, and the said sureties paid off the amount of his defalcation. They filed a bill in the circuit court of Randolph County stating that said checks drawn for said cash payment under said first sale were sent by the payee therein, E. D. Talbott, to said bank for payment, and Talbott, supposing that they had been entered to his credit on the books of the bank, drew checks to an amount beyond what appeared to his credit on the bank books about equal to those checks; in other words, that Gall as cashier allowed this overdrawing, and thus paid those checks, and thus became liable to the bank for their amount; and that his said sureties in paying his defalcation, amounting to six thousand dollars, a much larger sum than those checks, which amounted to one thousand six hundred and thirteen dollars and forty-eight cents, had paid those checks; and that as those checks represented purchase money for the land, the said sureties were entitled to be subrogated to the lien of the vendor to the amount of those checks, and they prayed in their bill that the said surplus, left after paying the said decree for purchase money in the second suit, might be subjected and applied to satisfy the amount which they claimed to have paid, represented by said checks. The suit was transferred to the circuit court of Barbour County.

Later J. N. B. Crim filed a petition in said suit setting up that he had recovered and owned numerous judgments against George W. Gall, Jr., which were docketed in the judgment lien docket of Randolph County, where the said lands lie, and that said judgments were liens on the lands, and consequently liens on the said surplus, and he prayed that the said surplus might be applied to the payment of his judgments. The plaintiffs in said suit were made parties to said petition, and they demurred thereto, and their demurrer was sustained and the petition was dismissed, and Crim has appealed.

The petition shows that Crim's judgments were liens on the land of G. W. Gall, Jr., and that Crim had an interest in the bone of contention, that is, this surplus fund. He had a right to litigate with A. J. Gall and B. M. Gall their claim to subject that fund to their demands; in short, both sides claimed the right to the same fund, inevitably so. "It is a cardinal rule in equity that all persons materially interested either legally or beneficially in the subject matter of the suit must be made parties to the suit." *Rexroad* v. *McQuain*, 24 W. Va. 32. When that petition came into the case it disclosed this interest of Crim conflicting with the claims of the Galls, and it then became the duty of Galls to amend their bill to make Crim a party, and to set up that conflicting claim of Crim, based on liens binding that fund, to the end that there might be square litigation between these conflicting claims based on allegations of the bill. Though Crim's judgments were docketed, he was not made a party, nor were said judgments mentioned, and therefore there could be no decree upon that bill touching this conflict. In *Shinn* v. *Board*, 39 W. Va. 497, it is held that when a person files his petition to be admitted as party in a pending suit in equity, in which no allegation is made naming or referring to him in any way, and no relief is prayed against him, and he is admitted to become such party, until he has been made a party by some allegation in the bill as amended, he does not become a party. See also *McCoy* v. *Allen*, 16 W. Va. 724. "Where proper parties are not properly before the court, the decree will be reversed and the cause remanded for further proceedings." *Crickard* v. *Crouch*, 41 W. Va. 503; *Miller* v. *Morrison*, 47 *Id.* 664.

These principles, it seems, require us to omit passing on the merits of the controversy between Galls and Crim. It has been a question of great perplexity to me whether we should take both

the bill and the petition and pass upon the contestation shown by them. Where a petition discloses plainly no interest in the petitioner, his petition would not be admitted; but this one discloses a plain interest in the subject in controversy, and we are therefore led to the conclusion that the circuit court must have been of the opinion that the Galls had a right to subrogation, and that it had preference over Crim, and as probably an amended bill would not present the question more fully than do the bill and petition taken together, we should read both together, and from them gather the whole case and decide whether the Galls have a right to subrogation, and if so, whether it takes preference over Crim. The grave questions in the case are, first, whether the Galls have any right to subrogation at all, and, second, whether, if so, it has priority over Crim. This course would seem anomolous; for the adjudication in such a case should be based on the bill and the defenses to it by parties to it. If we proceed to determine the case on the bill and petition, the bill goes without defense by Crim, as he cannot demur or answer the bill, not being a party. *Mosely* v. *Cocke,* 7 Leigh 225; *Shinn* v. *Board,* 39 W. Va. 506. Thus we would have to administer relief upon the bill as undefended, in the face of the fact, that the petition discloses a party having an actual conflicting interest upon which he asks the court to hear him. We cannot read that petition as an answer or demurrer. This seems an objection to acting on that bill unamended. It is said that the Galls have by subrogation a right to take the shoes of the vendor, and that a vendor suing to enforce his lien need not make judgment creditors of the vendee parties. Generally this is so in a bill having for its only purpose to enforce a vendor's lien; but this case is substantially different. In the case of a vendor's bill pure and simple, the lien is the only material element; whereas here there is another element, the very gist of the contention between the Galls and Crim, and that is whether the Galls have a right to subrogation at all, and if so, whether it takes precedence over Crim. This is another matter of litigation beyond the mere existence of a lien, and, viewing it strictly under equity practice, demands the application of that cardinal rule spoken of above, namely, that all persons having an interest in the subject of controversy should be formally parties to a bill, and their rights stated therein, especially where they are antagonistic to the relief claimed by the plaintiff. But if strict equity

practice did not require this, I think that section 58, chapter
125, Code, would require it, as it provides that when in any case
a complete determination of the controversy cannot be had with-
out the presence of other parties, the court may cause them to
be made parties by amendment to the action or suit. *Smith*
v. *Parsons,* 33 W. Va. 644. How could there be a complete
decision of this controversy patent before the court without Crim
being a formal party to that bill, unless we take up his petition
and read it as an answer or demurrer by one who is not a party
to the bill? It is not according to equity practice. The suitor
who wants affirmative relief upon a certain subject must bring
in the known adverse interests, and the court, being informed of
such interests, should proceed no further until the party asking
such relief shall in the regular way present that adverse interest.
The court in this case dismissed Crim's petition and then went on
to decree the fund to the Galls upon their said bill. We consider
this error under the principles above. I have thus shown that
the bill is incomplete. We cannot decree without considering
both petition and bill together, and that would violate equity
practice. So much for the case on the basis of the bill. The
petition made formal parties. Can we treat it as an independ-
ent suit, and decree the merits upon it alone? I think not. It
is simply filed as a petition in the pending case. As a bill it is
wholly defective because it does not tell of itself the interests of
the Galls as to the fund, and does not describe the judgments,
all of them, distinctly. Taken alone it is not sufficient as a bill
for full relief; but taken as a petition it is ample to tell the
court that there was a conflicting interest claimed by Crim based
on docketed judgments, constituting a lien directly antago-
nistic to the claim of the Galls. It did not purport to be an
independent bill for full relief. After the demurrer to it was
sustained Crim asked leave to amend the petition, how we do
not know; but he was refused such leave. I have concluded
that the suit of the Galls is the proper vehicle for the adjudica-
tion of the conflicting claims to this fund, and that according
to regular equity practice it should be perfected by an amended
bill making Crim and his claim a party and matter to that suit,
and that we ought not, as the case stands now, pass on the merits
of the controversy. Therefore we reverse the decree and remand
the cause in order that an order may be made requiring the Galls

to file an amended bill making Crim a party and setting up his claim, and to be further proceeded in according to principles governing courts of equity.

.        *Reversed.*